ORVILLE W. STEPHENSON AND VERONICA M. STEPHENSON, APPELLANTS, v. FRANK MORRISSEY, RAYMOND BASFORD, PAUL BASFORD, JR., AND MRS. PAUL BASFORD, RESPONDENTS.—230 S. W. 2d 124.

Kansas City Court of Appeals. Opinion delivered April 3, 1950.

44

*Gene Thompson* and *Richard F. Thompson* for appellants.

*Emmett L. Bartram* and *L. L. Livengood*, for respondent.

CAVE, J.—This suit seeks to enjoin the defendants from continuing to violate certain provisions of a lease contract and to recover damages therefor. After the pleadings were filed plaintiffs and defendant Morrissey each filed a motion for judgment on the pleadings. The court overruled plaintiffs' motion but sustained defendant Morrissey's motion and dismissed plaintiffs' petition and rendered judgment against them. They have appealed.

The pleadings and the motions concede that on or about July 1, 1947, plaintiffs and defendant Morrissey entered into a written lease wherein the plaintiffs leased to Morrissey a certain building in Maryville, Missouri, which had theretofore been used as a hotel. The first paragraph of the lease recites that plaintiffs have rented to Morrissey certain property "to be used for a hotel," and then follows the legal description of the premises. The lease also provides that Morrissey "further covenants and agrees that he will not sublet or assign this lease." Thereafter Morrissey took possession of the premises and operated the hotel. On or about March 5, 1948, he sublet a portion of the lobby of said hotel to defendants Basford for the purpose of installing a ladies ready-to-wear dress shop. Shortly thereafter, Morrissey began erecting partitions and enclosing the portion of the lobby so sublet and, in due time, the Basfords entered said premises and were conducting a place of business for the sale of ladies' dresses. When the plaintiffs learned of this sublease and the proposed remodeling and alterations of the lobby, they protested and requested the defendants to desist, which they refused to do, and this suit followed.

There is no forfeiture clause in the lease, and on motion the court struck from the petition the prayer asking for such relief, and we are no longer concerned with that issue. This leaves the question of plaintiffs' right to an injunction and damages for any violation of the terms of the lease.

Defendant Morrissey's motion for judgment on the pleadings is based on the propositions that (a) the words in the lease, "to be used as a hotel," are merely *descriptive* and are in no wise a *restriction;* (b) that the clause in the lease, "not to sublet or assign this lease," is not equivalent to a covenant against subletting a *portion* of the leased premises or *any part thereof;* and (c) that the lease is for more than two years and there is no forfeiture clause for breach thereof, therefore Sec. 2967, R. S. 1939, controls, and it is immaterial whether plaintiffs gave consent to subletting a portion of the premises.

Morrissey's lease was from August 1, 1947, to March 31, 1950, with the right to renew for an additional period of two years by giving notice. His sublease to the Basfords was from April 1, 1948 to March 31, 1950, with the right to renew for an additional period of two years by giving notice.

Under our view of the case, it is unnecessary to decide whether the language of the lease constitutes a *restriction* of the use of the property or is merely *descriptive*. It is conceded that the lessor, Morrissey, *sublet* a portion of the premises to the defendants, Basford, and that they are now in possession of the leased portion. If this *subletting* was a violation of the contract, then the court erred in sustaining the motion for judgment on the pleadings.

Morrissey contends that (a) the provision of the lease reading, "second party (Morrissey) further covenants and agrees that he will not sublet or assign this lease," is not a covenant against subletting a *portion* or *all* of the premises; and (b) that the lease shows on its face that it is for a period of more than two years; therefore, under Sec. 2967, it was not necessary to have the landlord's consent to the subletting. This section reads: "No tenant for a term not exceeding two years, or at will, or by sufferance shall assign or transfer his term or interest, or any part thereof, to another without the written assent of the landlord; * * *." This section certainly does not *prohibit* a landlord from *contracting* against the subletting or assigning of a lease without his written consent. In Shoe Company v. Odd Fellows Hall Company, 133 Mo. App. l.c. 242, it is held that a landlord may *absolutely prohibit* the assigning or subletting of a lease because he has the right to select his own tenant. Defendant cites the case of Bibler v. Iuchs, 275 S. W. 779. That case does hold that under the statute a tenant whose term is in excess of two years may assign or sublet without the landlord's consent; and it does appear that the lease under consideration was for more than two years, but we think the court overlooked *that fact* because the cases cited in support of the proposition do not justify such a broad statement. In none of those leases was the tenant prohibited from assigning or subletting without the written consent of the landlord. If that case intended to hold that a lease for more than two years may be assigned or a portion of the premises sublet without the landlord's consent, regardless of whether the lease contract provided otherwise, then it should not be followed. In Griggs v. Bridgewater, 167 Mo. App. 342, it is said of this section (345): "That statute by its terms only applies to leases not exceeding two years or tenancies at will or by sufferance." Cases such as Moore v. Guardian Trust Co., 173 Mo. 218, and Jones et al. v. Kansas City Board of Trade, 99 Mo. App. 433, are not controlling because there was no prohibition against subletting in the lease contract.

Defendant next argues that the quoted provision against subletting or assigning the lease cannot be construed to be a covenant against *subletting a part* of the premises. He first cites the cases annotated in 89 A. L. R. p. 1325. These cases discuss the question of *permissive* use of certain parts of the leased premises for a limited time and purpose; such as a tenant farmer permitting a third person to graze

cattle on a portion of the leased premises for a limited period. These cases are not in point. Defendant sublet a portion of the hotel to the Basfords by written contract for a definite period and upon certain terms and conditions. It certainly cannot be said their use of such premises is merely permissive.

He also cites 74 A. L. R. p. 1018, which announces a well-recognized general rule as follows: "It is well settled that a covenant not to *assign* a lease is not broken by *subletting,* the reason being that an *assignment* of a lease and a *subletting* are distinct transactions, so that a covenant against one does not include the other." There can be no dispute about that general proposition, but the present lease prohibits the lessee from *subletting* or *assigning*; therefore, he could neither *sublet* nor *assign* without breaching the contract, unless there was consent or waiver by the plaintiffs. We are unwilling to construe this lease as strictly and technically as Morrissey would have us do. We think the clause, "will not sublet or assign this lease," contemplates and means two separate restrictions or prohibitions, namely, (a) not to *sublet* the *premises* or *any part thereof,* and (b) not to make an *assignment* of the whole lease. This conclusion is supported by the above general rule that *assigning* a lease and *subletting* "are distinct transactions."

The general rule in construing contracts is that the court must take into consideration the subject-matter of the contract, the relation of the parties to that subject-matter, and the ordinary meaning of the language used in the contract. Donovan v. Boeck, 217 Mo. 70, 87; Collins v. Truman, 14 S. W. (2d) 526, 528; Ritchie v. State Board of Agriculture, 219 Mo. App. 90. In the last case we said (94):

"The object in construing a lease is to ascertain and give effect to the intention of the parties, without regard to the refinements of technical distinctions, in so far as that may be done without contravention of legal principles. The intention of the parties is to be gathered from the words which have been employed in connection with the subject-matter, the object and purpose of the lease, and the surrounding circumstances. * * * Greater regard is to be had to the clear intention of the parties than to any particular words which they may have used in the expression of their intention." (See, also, Mo. Athletic Ass'n. v. Delk Inv. Co. 323 Mo. 765, 20 S. W. (2d) 51.)

In Mullins v. Nordlow, 170 Ky. 169, 185 S. W. 825, the Supreme Court of Kentucky said (830): "The law gives the word 'sublet' a clear and distinct meaning, that is, it means to make a sublease, accompanied by a surrender of the possession and control of the premises, *or at least a part thereof."* Black's Law Dictionary, p. 1668, defines the word "sublease" as "a lease by a tenant to another person of *a part of the premises* held by him." In Thompson on

Real Property, Vol. 3, Sec. 1433, p. 671, the author, in discussing the question of subletting, says: "Nevertheless, the stipulation in ordinary form against subletting would be broken by a sublease of *any part of the demised premises.*"

We hold that plaintiffs' petition states a good cause of action for violation of the contract against *subletting,* and that plaintiffs are entitled to injunctive relief as to all the defendants, unless they have waived their right to such relief because of certain facts alleged in Morrissey's answer, which facts are not before us on this appeal. In Godfrey v. Black, 39 Kan., 193, 17 Pac. 849, the Supreme court of that state, in discussing the question and facts quite similar to the instant proposition, said: "Equity will, by injunction restrain the infraction of an agreement contained in a lease in regard to the use (subletting) of the premises, although such lease may not contain an express or formal covenant or a forfeiture clause with the right of re-entry." See, also, Knoepker v. Redel, 116 Mo. App. 62, 69.

It follows that the judgment should be reversed and the cause remanded with directions to the trial court to reinstate plaintiffs' petition. It is so ordered. All concur.